No. 21-1890

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

THE RELIGIOUS SISTERS OF MERCY, et al.,

Plaintiffs-Appellees,

v.

XAVIER BECERRA, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of North Dakota

**RESPONSE TO PLAINTIFF CATHOLIC BENEFITS ASSOCIATION'S
PETITION FOR PANEL REHEARING**

> BRIAN M. BOYNTON
> *Principal Deputy Assistant Attorney General*
> CHARLES W. SCARBOROUGH
> ASHLEY C. HONOLD
> *Attorneys, Appellate Staff*
> *Civil Division, Room 7261*
> *U.S. Department of Justice*
> *950 Pennsylvania Avenue, NW*
> *Washington, DC 20530*
> *(202) 353-9018*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| STATEMENT | 3 |
| ARGUMENT | 5 |
| CONCLUSION | 13 |
| CERTIFICATIONS OF COMPLIANCE | |
| CERTIFICATE OF SERVICE | |

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*ACLU Neb. Found. v. City of Plattsmouth*,
  358 F.3d 1020 (8th Cir. 2004), *reh'g granted and opinion vacated* (Apr. 6, 2004),
  *on reh'g en banc*, 419 F.3d 772 (8th Cir. 2005) .................................................................. 9

*City of Clarkson Valley v. Mineta*,
  495 F.3d 567 (8th Cir. 2007) ............................................................................................ 7

*Conners v. Gusano's Chi. Style Pizzeria*,
  779 F.3d 835 (8th Cir. 2015) .......................................................................................... 10

*Fort Bend County v. Davis*,
  139 S. Ct. 1843–47 (2019) .............................................................................................. 10

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ................................................................................................. 1, 12

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ......................................................................................................... 2

*Iowa League of Cities v. EPA*,
  711 F.3d 844 (8th Cir. 2013) ......................................................................................... 7, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 5, 7

*Newsome v. EEOC*,
  301 F.3d 227 (5th Cir. 2002) ........................................................................................... 11

*Occidental Life Ins. Co. of Cal. v. EEOC*,
  432 U.S. 355 (1977) ........................................................................................................ 10

*Ouachita Watch League v. U.S. Forest Serv.*,
  858 F.3d 539 (8th Cir. 2017) ............................................................................................ 5

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................... 4, 5, 6, 7, 8, 9

*Warth v. Seldin*,
  422 U.S. 490 (1975) .......................................................................................................... 6

**Statutes:**

Patient Protection and Affordable Care Act,
  42 U.S.C. § 18116(a) ........................................................................... 3

Religious Freedom Restoration Act of 1993,
  42 U.S.C. § 2000bb *et seq.* ................................................................ 1

20 U.S.C. § 1681(a) ............................................................................... 3

42 U.S.C. § 2000e-5(b) ........................................................................ 10

42 U.S.C. § 2000e-5(f)(1) ..................................................................... 10

42 U.S.C. § 2000e-8(e) ........................................................................ 11


**Regulation:**

29 C.F.R. § 1601.22 .............................................................................. 11


**Rule:**

Fed. R. Civ. P. 56(e) .............................................................................. 5

# INTRODUCTION

As the government explained in its petition for rehearing en banc, plaintiffs lack standing to challenge hypothetical future enforcement actions by the U.S. Department of Health and Human Services (HHS) and the U.S. Equal Employment Opportunity Commission (EEOC) because the prospect of enforcement is entirely speculative. Neither HHS nor EEOC has ever threatened or initiated any enforcement action in court against *any* religious entities with objections to providing or covering gender-transition services, much less brought an enforcement action in court against plaintiffs or any member of plaintiff the Catholic Benefits Association (CBA). By affirming a broad, pre-enforcement injunction based on the mere possibility of future government actions that might (or might not) infringe on religious liberties protected under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq.*, the panel violated fundamental Article III standing and ripeness requirements and RFRA's requirement of an individualized "to-the-person" analysis. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-431 (2006).

The panel's erroneous conclusion that at least some plaintiffs have standing to preemptively challenge government enforcement actions that may never actually occur is inextricably intertwined with the panel's assessment of associational standing. Although the panel correctly concluded that the CBA lacks standing to represent "unnamed members," that conclusion was also correct because the three *named*

plaintiffs who are CBA members—the Diocese of Fargo (the Diocese), Catholic

Charities North Dakota (Catholic Charites), and the Catholic Medical Association—

likewise failed to demonstrate a credible threat of enforcement sufficient to support

standing. Because the CBA's challenge to the panel's holding that the CBA lacks

associational standing rests exclusively on the standing of these three named plaintiffs,

this Court should not grant the CBA's rehearing petition without reconsidering the

more fundamental standing defects applicable to *all* plaintiffs, which are presented in

the government's petition for rehearing en banc.

In the alternative, this Court should deny the CBA's rehearing petition because

the organization still has not demonstrated that any CBA member has suffered an

injury in fact sufficient to confer "standing to sue in their own right." *Hunt v.

Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). As the panel

recognized, the CBA failed to identify any of its individual members aside from the

named plaintiffs who are also CBA members. The CBA argues on rehearing that the

panel ignored these three member entities in concluding that the CBA lacked

associational standing. But that argument, in turn, ignores the district court's

independent holding that the Diocese, Catholic Charities, and the Catholic Medical

Association do not have standing to sue HHS in their own right because they do not

receive federal funding and accordingly are not covered entities under Section 1557 of

2

Appellate Case: 21-1890     Page: 6     Date Filed: 02/17/2023 Entry ID: 5247112

the Affordable Care Act. A780-781.[1] Thus, even apart from the basic lack of any concrete or imminent enforcement activity that fatally undermines the standing of *all* plaintiffs, the CBA's reliance on its three members that are also named plaintiffs cannot be reconciled with the district court's prior holding that those entities lack standing on other grounds. Because the CBA thus still has not identified any member who has suffered an Article III injury, the panel should deny the CBA's petition for panel rehearing.

## STATEMENT

**1.** Section 1557 of the Affordable Care Act prohibits, as relevant here, "any health program or activity" "receiving Federal financial assistance" from discriminating against an individual based on "ground[s] prohibited under" several other statutes. 42 U.S.C. § 18116(a). One of the specified statutes is Title IX of the Education Amendments of 1972, which prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). An entity that does not receive federal funding is not a covered entity under Section 1557. *See* 42 U.S.C. § 18116(a).

**2.** The district court concluded that the CBA plaintiffs did not have standing to sue HHS in their own right because none of the CBA plaintiffs received federal funding, and thus they are not regulated entities under Section 1557. A780-781

---

[1] Citations to the government's Appendix are abbreviated A__. Citations to the Addendum filed with the government's petition for rehearing en banc are abbreviated Add.__

3

("Section 1557 does not apply directly to the named [CBA] Plaintiffs. . . . None of the [CBA] Plaintiffs aver that their own health plans receive federal funding. . . . Those Plaintiffs thus lack standing to challenge Section 1557 in their own capacities."). However, the district court concluded that the CBA had associational standing to sue on behalf of its unnamed members who receive federal funding. A781-782, A788. The district court reasoned that the CBA's "second amended complaint confirms that its membership includes Catholic hospitals and other healthcare entities" that receive federal funding. A782. In the district court's view, "[m]embers on whose behalf suit is brought may remain unnamed." A781.

3. The panel reversed the district court's conclusion that the CBA has associational standing to sue on behalf of its unnamed members. Add.26-28. The panel explained that the Supreme Court has instructed that "[a] court cannot 'accept[] the organizations' self-descriptions of their membership' because 'the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.'" Add.27 (second alteration in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). Thus, "the [Supreme] Court 'require[s] plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm.'" Add.27-28 (second alteration in original) (quoting *Summers*, 555 U.S. at 499). The panel concluded that the CBA "failed to identify members who have suffered the requisite harm." Add.28. The panel thus held that

4

"the CBA lacks associational standing to sue on behalf of unnamed members." Add.28.

## ARGUMENT

The panel correctly concluded that the CBA lacks associational standing. As the panel recognized, the normal rule is that "plaintiffs claiming an organizational standing" are required "to identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The Supreme Court explained that courts cannot simply "accept[] the organizations' self-descriptions of their membership" and that "individual affidavits" are necessary to permit the court to satisfy its "independent obligation to assure that standing exists." *Id.* Applying these principles, this Court has held that a plaintiff organization did not have associational standing where it relied on "a series of general and conclusory legal allegations" that did not identify any specific member who would be harmed by the defendants' actions. *Ouachita Watch League v. U.S. Forest Serv.*, 858 F.3d 539, 543 (8th Cir. 2017).

The CBA has not identified any specific members who have adequately demonstrated an injury such that they would have standing to sue in their own right. As in the district court, and before the panel on appeal, the CBA does not identify any individual members who receive federal funding at all, much less provide "specific facts" through affidavits or other evidence sufficient to demonstrate standing in their own right. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56(e)). The panel properly found this deficiency fatal to CBA's associational

5

standing given the well-established rule that organizations must identify more than "a statistical probability that some of [its] members are threatened with concrete injury." Add.27 (quoting *Summers*, 555 U.S. at 497).

In their rehearing petition, the CBA acknowledges that it must identify at least one member "suffering immediate or threatened injury," Pl.'s Pet. 8 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)), but the CBA nowhere identifies any individual member by name, much less specifically describes injuries to such a member with the specificity necessary to demonstrate standing, *compare with id.* at 11 (making general statements about members without providing details). Instead, the CBA relies exclusively on asserted injuries to three entities that are both named plaintiffs and CBA members—the Diocese, Catholic Charities, and the Catholic Medical Association—asserting that "[t]he panel, following the district court, found that these named member-plaintiffs have standing to sue in their own right." Pl.'s Pet. 10-11. As explained above, however, the district court specifically held that the named CBA plaintiffs do *not* have standing to sue in their own right because they do not receive federal funding and thus are not covered entities under Section 1557. A780-781 ("Section 1557 does not apply directly to the named [CBA] Plaintiffs. . . . None of the [CBA] Plaintiffs aver that their own health plans receive federal funding. . . . Those Plaintiffs thus lack standing to challenge Section 1557 in their own capacities."). The CBA cannot properly claim associational standing based on its members that the district court expressly found *lacked* standing.

6

The panel nowhere discussed, much less overturned, the district court's independent holding that the Diocese, Catholic Charities, and the Catholic Medical Association do not have standing because they do not receive federal funding under Section 1557. A780-781. Nor does the CBA ever acknowledge this critical holding in its rehearing petition. The CBA's exclusive reliance on the standing of these three CBA members as a predicate for associational standing is thus both misleading and flawed given the district court's conclusion that the "named [CBA] Plaintiffs" "lack standing to challenge Section 1557 in their own capacities." A780-781. For these reasons, the panel correctly carved out the CBA and its members, affirming the injunction "except to the extent it recognizes the associational standing of the CBA." Add.40.

In any event, the panel could not properly have concluded that the Diocese, Catholic Charities, and the Catholic Medical Association have standing to sue in their own right. These CBA members have not submitted "individual affidavits" or any other evidence demonstrating that they receive federal funding such that Section 1557 applies to them or demonstrating that they have suffered any injury from HHS or EEOC. *Summers*, 555 U.S. at 499; *see also Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013) (explaining that "to survive a summary judgment motion," a plaintiff "must set forth by affidavit or other evidence specific facts" to demonstrate standing (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007))); *Lujan*, 504 U.S. at 561 (explaining that elements of standing "are not mere pleading

7

requirements but rather an indispensable part of the plaintiff's case"). Indeed, the government made clear that the named CBA plaintiffs "did not have standing to sue HHS in their own right because none of the CBA plaintiffs alleged that they received federal funding, and thus they are not regulated entities under Section 1557." Gov't Br. 13, 29. The panel nowhere addressed this issue, much less overruled the district court's specific holding on this point.

Moreover, the Catholic Medical Association's broad allegation that it has "standing to represent all of its present and future members," A142, ¶ 39, is itself insufficient to demonstrate associational standing to bring suit on behalf of its members because it has not named any members who could sue in their own right, nor has it provided any "individual affidavits" demonstrating that any of its members receive federal funding or that they have suffered any injury from HHS or EEOC. *Summers*, 555 U.S. at 499. Because the Catholic Medical Association does not have associational standing to sue on behalf of its unnamed members, it cannot serve as the named plaintiff who supports CBA's associational standing. Neither the district court nor the panel addressed this independent standing defect. *See* Gov't Br. 40; *id.* at 35 n.4.

The CBA contends that it has associational standing because it alleged that "CBA members include hospitals and other healthcare entities that receive Medicaid and Medicare payments and thus are covered entities under the 2016 Rule." Pl.'s Pet. 11 (quoting A145, ¶ 55). But the Supreme Court has made clear that courts cannot

8

accept the organizations' "self-descriptions of their membership" and that plaintiffs are required "to identify members who have suffered the requisite harm" and provide "individual affidavits" to satisfy their burden to demonstrate standing. *Summers*, 555 U.S. at 499. The CBA has not identified any specific members who receive federal funding or provided any individual affidavits to support their allegations.

The cases cited by the CBA are inapposite. Pl.'s Pet. 9-10. For example, in *Iowa League of Cities*, 711 F.3d 844, the plaintiff association supported its standing with affidavits from specific members. *Id.* at 870 ("[T]he League members' affidavits evince the type of 'concrete' and 'actual or imminent' harm necessary to establish an injury in fact."). And even where this Court has allowed individual plaintiffs to proceed under pseudonyms, it has required an association basing its standing on such a person to provide specific evidence of how that person was injured. *See ACLU Neb. Found. v. City of Plattsmouth*, 358 F.3d 1020, 1026 (8th Cir. 2004) (explaining that "[b]ecause of the [challenged] monument, Doe avoids using the park for recreational activities" and that he "would use the park more often were it not for the monument"), *reh'g granted and opinion vacated* (Apr. 6, 2004), *on reh'g en banc*, 419 F.3d 772 (8th Cir. 2005). In contrast, the CBA has not offered affidavits or any other evidence demonstrating that specific named members have been injured in any concrete way.

The CBA's attempt to establish associational standing based on a new allegation that "EEOC had begun an enforcement action" against one of its members "for its refusal to provide gender-transition coverage," Pl.'s Pet. 16, is likewise

9

unavailing. As an initial matter, this Court "must assess standing in view only of the facts that existed at the time" of the operative complaint, so this Court should not consider the CBA's new allegations at all. *Conners v. Gusano's Chi. Style Pizzeria*, 779 F.3d 835, 840 (8th Cir. 2015). But even if this Court were to consider the CBA's new allegations that a private party filed a charge of discrimination against a CBA member and that EEOC requested documents as part of its investigation of that charge, these allegations do not demonstrate that EEOC has initiated any enforcement action in court against a CBA member.

When an individual files a charge of discrimination against an employer, Title VII requires EEOC to notify the employer of the charge and to initiate an investigation. *See* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed . . . [EEOC] *shall* serve a notice of the charge . . . on such employer[] . . . within ten days, and *shall* make an investigation thereof." (emphases added)). Accordingly, the CBA's new allegations only show that EEOC complied with its statutory obligations concerning the administrative process. EEOC engaging in its statutorily required administration process is very different from EEOC deciding to exercise its enforcement discretion to pursue an enforcement action in court against an employer. EEOC's administrative process is not an enforcement action at all, as EEOC does not "adjudicate the claim" and has no authority to impose penalties on employers itself. *Fort Bend County v. Davis,* 139 S. Ct. 1843, 1846–47 (2019) (alterations omitted); *see also Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 363 (1977); 42 U.S.C. § 2000e-

10

5(f)(1). CBA is thus incorrect in suggesting that its new allegations show that the government was disingenuous in arguing that EEOC has never brought an enforcement action in court against any objecting religious employer.

Moreover, the CBA itself states that once EEOC was informed that the employer was a CBA member, EEOC did not take any further action, and EEOC did not file an enforcement action in court. *See* Pl.'s Pet. 17 ("EEOC has taken no action since then.").[2] Even if there were no injunction in place, an employer could always respond to a charge of discrimination by invoking a RFRA defense. If EEOC were to conclude that the employer raised a valid RFRA defense, EEOC would not take any further action against the employer and would not file an enforcement action. *See Newsome v. EEOC*, 301 F.3d 227, 229-230 (5th Cir. 2002) (explaining that after an employer responded to a charge of discrimination with a religious defense, EEOC dismissed the charge of discrimination and did not bring an enforcement action). Indeed, it remains true that HHS and EEOC have not threatened or initiated any enforcement actions in court against *any* objecting religious entities.

---

[2] EEOC cannot respond to the CBA's allegations in any further detail, as Title VII's confidentiality provision precludes EEOC from providing any details regarding any charge. *See* 42 U.S.C. § 2000e-8(e) ("It shall be unlawful for [EEOC] to make public in any manner whatever any information obtained by [EEOC] pursuant to its authority under this section prior to the institution of any proceeding"); 29 C.F.R. § 1601.22 ("Neither a charge, nor information obtained during the investigation of a charge of employment discrimination under title VII . . . shall be made matters of public information by [EEOC] prior to the institution of any proceeding under title VII[.]").

11

Finally, the CBA errs in contending that the panel's case-specific finding that the CBA lacks associational standing to sue on behalf of its unnamed members presents a question of exceptional importance. Pl.'s Pet. 16-20. In future cases, the CBA should be able to avoid this problem by identifying at least one CBA member suffering concrete harm sufficient to confer standing, but the CBA's inability to do so here underscores a more fundamental standing problem applicable to all the plaintiffs in this case: the absence of a credible threat of enforcement action by either EEOC or HHS. In short, the deficiencies in the CBA's attempt to establish associational standing reflect even more basic problems resulting from the absence of any specific enforcement activity that could provide standing, create a ripe claim, or provide an adequate basis for the individualized, "to-the-person" analysis required under RFRA. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-431 (2006). As explained in the government's pending petition for rehearing en banc, the broad pre-enforcement injunction the panel has affirmed violates bedrock Article III limitations on judicial power and effectively transforms RFRA from a shield against government action that actually infringes on religious exercise into a sword used to preemptively attack hypothetical, future government actions that may never come to pass. Because these are questions of exceptional importance, the full Court should grant rehearing en banc, but the CBA's independent challenge to the panel's associational standing holding does not independently warrant further review.

12

## CONCLUSION

For the foregoing reasons, the Court should deny the CBA's rehearing petition and grant the government's petition for rehearing en banc.

Respectfully submitted,

                                BRIAN M. BOYNTON
                                   *Principal Deputy Assistant Attorney*
                                      *General*
                                CHARLES W. SCARBOROUGH

                               *s/ Ashley C. Honold*
                               ASHLEY C. HONOLD
                                  *Attorneys, Appellate Staff*
                                  *Civil Division, Room 7261*
                                  *U.S. Department of Justice*
                                  *950 Pennsylvania Avenue NW*
                                  *Washington, DC 20530*
                                  *(202) 353-9018*
                                  *ashley.c.honold@usdoj.gov*

FEBRUARY 2023

## CERTIFICATIONS OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,082 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/ Ashley C. Honold*
Ashley C. Honold

# CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Ashley C. Honold*
Ashley C. Honold